IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROSE MOLINA, on behalf of Y.E.B.C., a minor child; | ) | CASE NO. 1:22-CV-01816-SL |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | CARMEN E. HENDERSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant, | | |

**I. Introduction**

Plaintiff, Rose Molina, on behalf of Y.E.B.C., a minor child ("Claimant"), seeks judicial

review of the final decision of the Commissioner of Social Security denying her application for

Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is recommended that the

Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this

case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**II. Procedural History**

On August 22, 2019, Claimant filed an application for SSI on behalf of Y.E.B.C, a minor

child, alleging disability beginning on April 12, 2011, and claiming he was disabled due to ADHD,

aggression, learning disability, dyslexia, can't read in Spanish or English, and thyroid problem.

(ECF No. 8, PageID #: 221, 257; Ex. 1D, 3E). The application was denied initially and upon

reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ").

(ECF No. 8, PageID #: 129, Tr. at 93).  On July 19, 2021, an ALJ held an online video hearing

due to the circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic. Claimant's mother, Rose Molina, participated by online video and testified on behalf of the claimant. Ms. Molina testified with the assistance of a Spanish interpreter. Claimant was also represented by counsel at the hearing. On August 2, 2021, the ALJ issued a written decision finding Claimant was not disabled.  (ECF No. 8, PageID #: 53-72, Tr. at 17-36).  The ALJ's decision became final on August 16, 2022, when the Appeals Council declined further review.  (ECF No. 8, PageID #: 37, Tr. at 1).

On October 10, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 15, and 16). Claimant asserts a single assignment of error: that "[t]he ALJ's finding that [Y.E.B.C] has a less than marked limitation in the domain of Interacting and Relating with Others is not supported by substantial evidence." (ECF No. 12 at 8).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the testimony of Claimant's mother, Rosa Molina:

> Claimant's mother, Rosa Molina, testified at the hearing. She said the child does not listen to her. His grades were alright last year. She testified the claimant was suspended for fighting with other children. She said he was put in a room by himself for discipline. Ms. Molina testified she has to deal with behavioral issues two to three times a week. These still occur with online schooling because the claimant does not want to start schooling or open up the computer. She said the claimant takes his medication regularly, but the medication is not helping. Ms. Molina testified her son speaks on the telephone in Puerto Rico, but he has no friends outside of school in Ohio. The claimant likes to play video games and draw. He has temper tantrums where he yells and throws things. Claimant is in counseling. She said he tried to work a couple of times, but he only lasted 1-2 weeks at each workplace.

(ECF No. 8, PageID #: 63, Tr. at 27).

2

### B. Relevant SSA Reports

#### 1. August 22, 2019 Function Report

On August 22, 2019, Claimant's mother completed a Function Report. (ECF No. 8, PageID #: 243-253, Ex. 1E). Claimant's mother reported that "[h]e gets frustrated and will start crying as he can't seem to explain things. He can't control his anger and then gets upset." (ECF No. 8, PageID #: 248, Tr. at 212). She later described Claimant's issues interacting with others: "I have been called by the school as there ha[ve] been instances where my son has become frustrated and angry with other students. He can't be controlled and the school calls. He will yell and throws things. He will ask me to "forgive" him as he didn't mean it after he is able to calm down. He usually goes to hi[s] room after I've picked him up from school, we talk and he calms down. He is under counseling help now." (ECF No. 8, PageID #: 250, Tr. at 214).

#### 2. April 21, 2020 Function Report

On April 21, 2020, Claimant's mother completed another Function Report. (ECF No. 8, PageID #:292-328, Ex. 8E). She noted that Claimant does not have friends and fights whenever he is around his family members. (ECF No. 8, PageID #: 292, Tr. at 256). She stated that he is calmer in the morning when his medications are still in his system, but after noon his attitude changes and he fights with others. (*Id.*). Claimant's mother reported that Claimant was suspended for fighting on the school bus and that he does not relate to his peers and some teachers. (ECF No. 8, PageID #: 293, Tr. at 257). She again described Claimant as "always mad and fight[ing]", that he does not want to be around anyone, and that he fights with other children when they are around. (*Id.*).

### C. Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms:

> Claimant underwent a mental health diagnostic assessment on October 16, 2018, at Community Counseling Center of Ashtabula.

3

He was 13 years old. Claimant's English was very limited and his stepfather had to interpret. Claimant had been diagnosed with ADHD in Puerto Rico. Concerns were anxiety, anger, family relationships and self-esteem issues. Claimant showed a change in appetite, compulsions/obsession and aggression towards others. The child's family had moved to Ashtabula from Puerto Rico four months previously. Claimant was diagnosed with attention deficit hyperactivity disorder, combined; adjustment disorder with mixed anxiety and depressed mod; and circadian rhythm sleep disorder, unspecified type (Exhibit 2F/10 -16).

Claimant's mother decided to transfer services to Signature Health because she felt claimant's medications were not working (Exhibit 5F/11). Madhur Medarametla, MD, evaluated the claimant on July 31, 2019. The child's mother felt Depakote was not effective and stimulants were causing him to be withdrawn and sulky. Claimant benefited from Ritalin. The AM dose lasts until noon, but the PM dose wears off by 3:00 Pm [sic], causing disruption in the evenings. Claimant is easily up and has tantrums. He becomes upset with peers when they tease him.

Claimant admitted to having imaginary friends. He denied hearing voices, but then he reported hearing "bad" voices, but he said he does not pay attention to them. Initial diagnoses included ADHD, combined type by history; global developmental delays; and unspecified mood disorder. Dr. Medarametla discontinued Ritalin and Depakote. Dr. Medarametla started the claimant on Concerta and Seroquel. Claimant was to continue counseling (Exhibit 5F/11-13). Later records show claimant denied auditory and visual hallucinations. He did not appear to be delusional (Exhibit 5F/36, 41; 10F/16, 18, 23, 30; 14F/5; 15F/5; 17F/5).

Bryan Krabbe, PsyD, evaluated the claimant at the request of the State Agency on November 15, 2019. The child's mother accompanied him and served as the primary informant. The mother said claimant has a lot of learning problems and cannot read or write. Claimant was in the ninth grade and receiving special education services. He had not repeated a grade and typically received "Bs" in school. Claimant's mother said he had problems staying focused in school. Ms. Molina stated that claimant got along adequately with his teachers and peers, but she also said he had disciplinary problems at school for fighting. The child has difficulty controlling his anger. Claimant was on Seroquel, Trazodone and an ADHD medication. Claimant received counseling services through school. During the evaluation, claimant was fidgety but stayed in his chair. He was cooperative. Grooming and hygiene were adequate. Claimant was

administered the Test of Nonverbal Intelligence, fourth edition (TONI-4), which offers an assessment of intelligence, aptitude, abstract reasoning, and problem solving. Educational, cultural, or experiential backgrounds will not adversely affect test results. Claimant is currently functioning in the Poor to Below Average range with an Index score of 80 and a percentile rank of 9. As a point of reference, the average Index score is 100 +/- 10. Dr. [Krabbe] diagnosed unspecified attention deficit hyperactivity disorder; unspecified depressive disorder; and borderline intellectual functioning (Exhibit 6F).

Claimant is prescribed medication for ADHD, and adjustments have been made to his medication. In August 2019, the child's mother said medication was only lasting until about 3PM. Guanfacine was added (Exhibit 5F/29; 11F/35). On August 29, 2019, claimant's mother reported he was doing well on medication (Exhibit 5F/36; 11F/43). Teachers complained claimant was out of control in December 2019, but he was not taking PM Guanfacine due to being active in sports. He was being defiant towards parents. Concerta was increased and claimant was to hold Guanfacine (Exhibit 10F/18; 11F/57). Records show sometimes the child ran out of medication (Exhibit 10F18; 10F/25). Prescription was changed to extended release Seroquel in June 2020 (Exhibit 14F/7-8). The child was started on melatonin in August 2020 due to difficulty falling asleep (Exhibit 16F/14). In January 2021, Seroquel was discontinued and claimant was started on Abilify. Concerta was continued (Exhibit 17F/7-8).

School records note difficulty because claimant is primarily Spanish speaking. It is hard to really identify when he does not understand something or whether he is avoiding doing what he is asked but letting others believe it is a language issue. His behavior this past grading period showed shown great improvement from last school year. He has shown that he has the ability to focus on the task on hand and complete his work with assistants (Exhibit 19E/13-14).

(ECF No. 8, PageID #: 63-64, Tr. at 27-28).

IV.    **The ALJ's Decision**

The ALJ made the following findings relevant to this appeal:

3. The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD); depression; learning disorder/unspecified developmental disorder; borderline intellectual

functioning; unspecified episodic mood disorder; low weight; and
dyslexia (20 CFR 416.924(c)).

4. The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 416.924, 416.925 and 416.926).

(ECF No. 8, PageID #: 60, Tr. at 24).

5. The claimant does not have an impairment or combination of
impairments that functionally equals the severity of the listings (20
CFR 416.924(d) and 416.926a).

(ECF No. 8, PageID #: 62, Tr. at 26).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is
supported by substantial evidence and was made pursuant to proper legal standards." *Winn v.
Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g).
"[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a
preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to
support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting
*Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council
becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r
of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott
v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)
(*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

An individual under the age of eighteen is considered disabled if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 1382c(a)(3)(A). The regulations provide a three-step process for evaluating a child's disability claim. 20 C.F.R. § 416.924(a). First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). Second, the ALJ must establish whether a claimant has a severe medically determinable impairment. 20 C.F.R. § 416.924(d). Third, the ALJ must consider whether the claimant has an impairment or combination of impairments that meets or medically equals the listings. 20 C.F.R. § 416.924(d). If a severe impairment does not meet or medically equal any listing, the ALJ must decide whether it results in limitations that functionally equal the listings. 20 C.F.R. § 416.926a.

In determining whether an impairment or combination of impairments functionally equals the listings, the ALJ assesses the claimant's functioning in terms of six domains: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Self; and 6) Health and Physical Well-Being. 20 C.F.R. § 416.926a. In making this assessment, the ALJ compares how the claimant performs with children who do not have an impairment. 20 C.F.R. § 416.924a(b). To functionally equal the listings, the claimant's impairment must result in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

C. **Discussion**

Claimant raises one issue on appeal: "[t]he ALJ's finding that [Y.E.B.C] has a less than marked limitation in the domain of Interacting and Relating with Others is not supported by substantial evidence." (ECF No. 12 at 8). Claimant argues that Intervention Specialist Tina Stepak's opinion regarding Claimant's abilities is equivalent to a marked limitation and, thus, the ALJ's finding of less than a marked limitation contradicts the ALJ's finding that Ms. Stepak's opinion was persuasive. Claimant argues that the ALJ's failure to explain this contradiction requires remand. The Commissioner argues that the ALJ sufficiently explained their reasoning and that substantial evidence supports the conclusion.

The ALJ summarized Ms. Stepak's opinion as follows:

> Tina Stepak, Intervention Specialist, completed a questionnaire on October 16, 2019. She had known the claimant for two months. [...] She checked off serious problems in expressing anger appropriately, telling stories and using language appropriate to the situation and listener. She noted the child could do more if he spoke and read English (Exhibit 4E/6). [...] This opinion is persuasive and consistent with the evidence of record.

(ECF No. 8, PageID #: 66, Tr. at 30).

In finding that Claimant has a less than a marked limitation in interacting and relating with others, the ALJ explained that

> Claimant sometimes fights with peers (Exhibit 2F/41) and he had a temper tantrum at school after his teacher confiscated his cellphone (Exhibit 2F/46). Ms. Molina told consultative psychological examiner Krabbe that claimant got along adequately with his teachers and peers, but she also said he had disciplinary problems at school for fighting (Exhibit 6F). The most recent school records show a number of absences (Exhibit 2E/4-6), but no disciplinary incidents (Exhibit 22E/8). In his most recent IEP of February 10, 2021, it is noted that the child "works well with others. He is able to work on his own and with others", "likes to work with his hands in crafts and enjoys drawing", "quiet in the classroom, but when he is with friends he is social" (Exhibit 19E/13-14).

8

(ECF No. 8, PageID #: 65, Tr. at 29). This explanation does not include any limitations set forth by Ms. Stepak despite the ALJ finding her opinion persuasive and consistent with the record.

The Regulations state that a "marked" limitation exists when a person's "impairment(s) interferes seriously with [their] ability to independently initiate, sustain, or complete activities. [Their] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.' "20 C.F.R. § 416.926a(e)(2)(i). Accordingly, a serious limitation in only *a single* activity may cause a person to have a marked limitation in the particular domain.

Here, Ms. Stepak opined that Claimant was at least seriously limited in three listed activities: expressing his anger appropriately; relating experiences and telling stories; and using language appropriate to the situation. (ECF No. 8, PageID #: 268, Tr. at 232). Ms. Stepak noted Claimant's inability to use English as a factor hindering his ability to tell stories and use appropriate language. (*Id*.). The ALJ found Ms. Stepak's opinion persuasive and consistent with the record but did not find a marked limitation in this functioning area and failed to explain this conflict.

The Commissioner argues that the ALJ explained why they found less than a marked limitation when they noted that Ms. Stepak stated that Claimant could do more if he spoke and read English. (ECF No. 15 at 12). However, Commissioner merely *interprets* the ALJ's recitation of the facts as explanatory. The ALJ never actively stated that Ms. Stepak's opinions were rejected, nor the reason for rejecting them. "[T]his Court is not permitted to make inferences from the cited evidence to rationalize the ALJ's decision, especially where, as in here, those inferences are in direct conflict with the ALJ's own statements about his reasoning." *Conrad v. Saul*, No. 5:20-CV-

01509, 2021 WL 4429848, at *11 (N.D. Ohio May 19, 2021), *report and recommendation adopted*

*sub nom.*, No. 5:20CV1509, 2021 WL 4429912 (N.D. Ohio Sept. 27, 2021). The ALJ explicitly

found Ms. Stepak's opinion persuasive and consistent with the record, thus never indicating that

her opinions were rejected. Even if this Court considered the ALJ's citation to Ms. Stepak's note

as an explanation for finding less than marked limitation, this explanation would only apply to two

of the three severely problematic activities and, as discussed above, being seriously limited in only

a single activity *could* result in a marked limitation. *See* 20 CFR § 416.926a(e)(2); *see also* SSR

09-5p: The Functional Equivalence Domain of "Interacting and Relating with Others", 2009 WL

396026 (S.S.A.).

The Commissioner also argues that the ALJ provided substantial evidence to support the

finding of less than a marked limitation in this area. Specifically, that the ALJ acknowledged that

Claimant fought with his peers at school, had a temper tantrum at school after his teacher

confiscated his cellphone, his mother's statement that he "got along adequately with his teachers

and peers," 2020 to 2021 school records showing a number of absences but no disciplinary

incidents, and Claimant's IEP note that he "works well with others" and "[i]n the classroom, he is

quiet but when he is with friends he is social." (ECF No. 15 at 14-15). Claimant responds that the

2021 IEP took place in the midst of the pandemic when the ability to observe Claimant's ability to

interact with his peers "was virtually non-existent due to the students attending class remotely from

their homes" and that Claimant's "inter-sibling fighting had increased" during that time. (ECF No.

16 at 3). Although the evidence is open to multiple interpretations, the fact remains that the ALJ

found Ms. Stepak's opinion persuasive *and consistent with the record*, and then failed to include

her opined limitation in the analysis of Claimant's functional abilities *and failed to explain its*

*absence.* Commissioner correctly points out that a "court may look to any evidence in the record,

10

regardless of whether it has been cited by the [ALJ]" to determine whether a decision is supported by substantial evidence. (ECF No. 13 (quoting *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001)). However, an ALJ must explain their reasoning when they do not include limitations from an opinion found to be persuasive. *See Horinek v. Saul*, No. 1:19-CV-2141, 2020 WL 4340987, at *10 (N.D. Ohio July 7, 2020) (noting "[t]his [explanation] is particularly important where a State Agency psychologist assessed a restriction, the ALJ accords the author of that opinion "some weight" noting its general consistency with the record"), *report and recommendation adopted*, No. 1:19CV2141, 2020 WL 4339327 (N.D. Ohio July 28, 2020). Although the ALJ was not under any obligation to adopt each of Ms. Stepak's opinions related to Claimant's abilities, the ALJ's decision is bereft of any discussion explaining why those opinions were not credited. Accordingly, the ALJ erred by not explaining why they did not find that Ms. Stepak's opinion as to Claimant's serious limitations in three listed activities equated to a marked limitation in interacting and relating with others.

The Commissioner also argues that Ms. Stepak's opinion that Claimant did not require behavioral intervention demonstrates that Claimant did not have marked limitations interacting and relating with others. (ECF No. 15 at 12). The ALJ, however, did not include this in his reasoning. "The Commissioner cannot cure a deficient opinion by offering explanations that were not offered by the ALJ." *Conrad*, 2021 WL 4429848, at *11. As courts within this district have noted, "arguments [crafted by defense counsel] are of no consequence, as it is the opinion given by an administrative agency rather than counsel's '*post hoc* rationale' that is under the Court's consideration." *See, e.g., Blackburn v. Colvin*, No. 5:12CV2355, 2013 WL 3967282 at *8 (N.D. Ohio July 31, 2013); *Cashin v. Colvin*, No. 1:12 CV 909, 2013 WL 3791439 at *6 (N.D. Ohio July 18, 2013); *Jaworski v. Astrue*, No. 1:10 CV 02936, 2012 WL 253320 at *5 (N.D. Ohio Jan. 26,

2012). Here, the explanation advanced by the Commissioner's *post hoc* rationale contradicts the reasoning set forth in the ALJ's decision. Accordingly, this Court cannot accept the Commissioner's *post hoc* rationalizations.

## VI. Conclusion

The ALJ was not required to adopt all of the limitations in Ms. Stepak's opinion despite finding it persuasive. However, the ALJ was required to coherently explain their treatment of the opinions, and they failed to do so. Therefore, this case should be remanded to afford the ALJ the opportunity to explain why they chose to exclude the limitations in Ms. Stepak's opinion, which they found persuasive and consistent with the evidence of record.

This error was harmful to Claimant because it was case determinative. The ALJ already found that Claimant suffered a marked limitation in the domain of Acquiring and Using Information, and a second marked limitation in the domain of Interacting and Relating with Others would have dictated a finding of disabled. 20 C.F.R. §416.926a(d).

## VII. Recommendation

Based on the foregoing, it is recommended that the Court REVERSE the Commissioner of Social Security's nondisability finding and REMAND this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: July 6, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

_____

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections

within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).